**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Case No. 09-34031-H4-11** |
| | § | |
| **GOODCRANE CORPORATION** | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |

**INTERIM ORDER AUTHORIZING THE TRUSTEE TO INCUR SECURED**
**SUPERPRIORITY POST-PETITION FINANCING WITH**
**TEXAS REEXCAVATION LC PURSUANT TO 11 U.S.C. §364(c)(2) and (d) AND**
**GRANTING PRIORITY PURSUANT TO 11 U.S.C. § 364(c)(1)**

The Court has considered the Trustee's Emergency Motion for Entry of Interim and Final

Orders Approving Secured Superpriority Post-Petition Financing with Texas Reexcavation LC

Pursuant to 11 U.S.C. §364(c)(2) and (d) and to Grant Priority Pursuant to 11 U.S.C. § 364(c)(1)

(the "Financing Motion") seeking the following:

(i)     authority for Janet S. Northrup, the Chapter 11 Trustee ("Trustee") of the Estate
of GoodCrane Corporation (the "Debtor"), to obtain a post-petition loan from
Texas Reexcavation LC (the "Lender") in the amount of $250,000 (the "Working
Capital Loan") in accordance with the terms and conditions set forth in this Order
(the "Financing");

(ii)    authority for the Trustee to execute, deliver, and perform under the Note (defined
below), certificates and reports delivered under the Note, exhibits and schedules
to the Note, all agreements, documents, and instruments in favor of the Lender
ever delivered under the Note, and all renewals, extensions, and restatements of,
and amendments and supplements to, the foregoing (collectively, the "Financing
Documents");

(iii)   approval of the terms and conditions of the Financing and the Financing
Documents as executed and delivered;

(iv)    granting to the Lender superpriority status pursuant to 11 U.S.C. §364(c)(1); and

(v)     granting to the Lender a first priority lien on all assets of the Debtor pursuant to
11 U.S.C. § 364(c)(2) and (d), subordinate only to the Permitted Liens listed on
Schedule 1, which include liens granted under any Memorandum of
Understanding or amendment thereto approved by the Court between the Trustee,

on the one hand, and Stabbert Marine, CVI Global Lux Oil and Gas S.À.R.L., or Otto Candies, LLC, respectively, on the other hand (collectively, the "Exceptions").

The Trustee and the Lender have negotiated in good faith and have represented to the Court that they have agreed in good faith to the terms and conditions in this Order (the "Financing Order").

The Court makes the following findings of fact and conclusions of law:

1.      Notice is sufficient and appropriate as required under the Bankruptcy Rules under the particular circumstances of this case.  The parties hereto have stipulated and agreed as follows, and the Court hereby approves and adopts said stipulations and agreements as findings of fact and conclusions of law, as appropriate, and grants the relief requested herein to facilitate the reorganization of the Debtor's business.

2.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and 157.  Consideration of the Financing Motion constitutes a core proceeding as defined in 28 U.S.C. § 157.

3.      The Lender has agreed to lend the Trustee $250,000 in return for superpriority status pursuant to 11 U.S.C. §364(c)(1) and a first priority lien on property of the estate pursuant to 11 U.S.C. §364(c)(2) and (d), subject to the Exceptions.  By agreement of the Parties the priority granted pursuant to this Financing Order shall be subordinate to that of Karl Winter previously approved by this Court at docket nos. 435 and 455, and subject to all other subordinations and restrictions set forth in those orders.

4.      Lender and Trustee agree that the Financing Documents and this Financing Order and the terms contained herein shall constitute the lending agreement between the parties.  The

Financing to be taken by Trustee from Lender is in the best interests of the Debtor's bankruptcy estate and its creditors.

5.      The agreements and arrangements authorized in this Financing Order have been negotiated at arms-length, are fair and equitable under the circumstances, and are enforceable pursuant to their terms.  Lender and the Trustee have acted in good faith (including, without limitation, as that term is used in 11 U.S.C. §§363 and 364 and otherwise) in the negotiations and preparation of this Financing Order, have been represented by counsel, and intend to be and are bound by its terms.

6.      Lender is extending credit in good faith as that term is utilized in 11 U.S.C. §364. Lender is entitled to and is hereby granted the benefits of the provisions of 11 U.S.C. §364(e).

7.      Lender is willing to provide the Financing to or for the benefit of the Debtor only in accordance with the terms of the Financing Documents and this Financing Order.

8.      The Trustee has requested that the Lender provide the Financing.  The use of the Financing is actual and necessary for the potential rehabilitation of this estate and will benefit the Debtor and this estate.

9.      The Trustee is unable to obtain unsecured credit allowable under 11 U.S.C. §503(b)(1), or pursuant to 11 U.S.C. §364(a) and (b).  No source of unsecured credit, and no source of credit in the amount of $250,000, whether interim or otherwise, exists for the Debtor other than the Financing.  Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.  The extension of credit described in the Motion and this Financing Order is actual and necessary to preserve the estate, and will avoid immediate and irreparable harm to the Debtor, its estate and assets.

10.     The general terms of the Financing, as more particularly described in the Note, are as follows:

        (a)     Lender will lend the Trustee the amount of $250,000, as memorialized by the $250,000 Note attached as Exhibit "A" (the "Note").

        (b)     The unpaid principal balance of the Note shall bear interest from August 31, 2010 until repaid at a rate per annum that shall from day to day be equal to the lesser of (i) the Maximum Rate (as defined in the Note) or (ii) eight percent (8.00%) per annum.

        (c)     The Note shall mature on the earliest to occur of the earliest of (a) the date of the closing under the terms of any definitive agreement that may be executed by the Trustee, as seller, and Lender, as purchaser, of the Purchased Assets; (b) the date of closing of any other sale of assets of the Debtor on which Lender is granted a lien by the Financing Documents, in an amount sufficient to repay the Note in whole or in part, provided, however, that if such sale generates proceeds sufficient to pay the Note only in part, then only that part of the Note shall mature on the date of closing of such sale; or (c) August 31, 2011.

11.     Creditors holding liens on property of the estate are receiving adequate protection under 11 U.S.C. §364(d)(1)(B) as such creditors will be paid their allowed secured claims from the proceeds of the sale(s) of the Debtor's assets.

12.     Lender is entitled to superpriority status pursuant to 11 U.S.C. §364(c)(1) for all amounts owed under the Financing Documents, except as set forth above.

13.     Lender is entitled to a first priority lien on all of the assets of the Debtor pursuant to 11 U.S.C. § 364(c)(2) and (d), subordinate only to the Exceptions.

14.     The Trustee is hereby authorized to incur the Financing in strict accordance with the Financing Documents and this Financing Order.

15.     This Financing Order is entered pursuant to, and shall be construed and be consistent with, 11 U.S.C. §364, and Bankruptcy Rules 4001(b)(2) and 4001(c)(2) to prevent immediate and irreparable harm to the Debtor.

16.     The Trustee is authorized and directed to execute, deliver, perform, and comply with the terms and conditions of the Financing Documents, and to be bound thereby, and the Trustee agrees to perform any and all acts required by the Lender to comply with the terms and conditions of the Financing Documents and this Financing Order.

17.     The terms and conditions of the Financing Documents and this Financing Order are sufficient and conclusive evidence of the borrowing arrangements by and among the Trustee and the Lender hereunder, and of the Trustee's agreement to the terms and conditions of the Financing Documents and this Financing Order for all purposes.

18.     No obligations incurred or payments or other transfers made by or on behalf of the Debtor on account of the financing arrangements with the Lender shall be avoidable or recoverable from the Lender under any section of the Bankruptcy Code, or any other federal, state or other applicable law.

19.     The occurrence of any of the following shall constitute an event of default under this Financing Order: (a) any default, violation or breach of any of the terms of this Financing Order by the Debtor which is not cured within three (3) business days of such default, violation or breach, (b) conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code, (c) appointment of an examiner in the Debtor's bankruptcy case, (d) the dismissal of the Debtor's bankruptcy case, (e) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Financing Order without the express prior written consent of the Lender, (f) an Event of Default under the Financing Documents which is not cured within three (3) business days of such Event of Default, (g) the Trustee ceases to conduct the Debtor's operations in the ordinary and usual course of business consistent with past practice, or (h) the Trustee shall fail to pay when due any principal of, or interest on, the

Note according to its terms (any of the foregoing events of default being referred to in this Financing Order, individually, as an "Event of Default" and, collectively, as "Events of Defaults").

20.     Upon the occurrence of any Event of Default, at all times thereafter, and without further act or action by Lender or this Court, or any further notice or hearing, or any further order of this Court: (i) all of the Financing shall immediately be accelerated and become due and payable (ii) any and all obligations of the Lender under this Financing Order and the Financing Documents shall terminate.

21.     The Working Capital Loan is made in reliance on this Financing Order.

22.     The terms and provisions of this Financing Order and any actions taken pursuant hereto, excluding any obligation of the Lender under the Financing Documents, shall survive entry of any order that may be entered either (i) converting to chapter 7 or dismissing the Debtor's bankruptcy case, or (ii) confirming or consummating any plan of reorganization of the Debtor.  The terms and provisions of this Financing Order as well as the priorities in payment and lien granted pursuant to this Financing Order and the Financing Documents shall continue in this or any superseding case under the Bankruptcy Code of the Debtor, and such priorities in payment and lien shall maintain their priorities as provided by this Financing Order until all Financing is indefeasibly satisfied in full by its terms and discharged and the Lender shall have no further obligation or financial accommodation to the Debtor or Trustee.

23.     The provisions of this Financing Order shall inure to the benefit of the Trustee, the Debtor and the Lender, and they shall be binding upon (a) the Debtor and its respective successors and assigns, (b) the Trustee or other fiduciary hereafter appointed as legal representative of the Debtor or with respect to property of the estate of the Debtor, whether under

chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case, and (c) all creditors of the Debtor and other parties in interest.

24.     If an order is entered, whether *sua sponte* by the Court or otherwise, dismissing the Debtor's bankruptcy case or converting the case to chapter 7, such order shall recognize that such dismissal or conversion shall not affect or diminish the Lender's rights, priorities, or remedies hereunder.

25.     If any or all of the provisions of this Financing Order are hereafter modified, vacated, or stayed, such modification (which shall not occur without the prior written agreement of the Lender), vacation, or stay shall not affect (a) the validity of any obligation, indebtedness, or liability incurred by the Debtor to the Lender before the effective date of such modification, vacation or stay, or (b) the validity or enforceability of  priority, or other protection authorized or created hereby or pursuant to the Financing Documents.  Notwithstanding any such modification, vacation, or stay, any indebtedness, obligation, or liabilities incurred by the Debtor to the Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Financing Order, and the Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein and pursuant to the Financing Documents with respect to all such indebtedness, obligations, or liabilities.  The obligations and indebtedness of the Debtor to the Lender under the Financing Documents shall not be discharged by the entry of an order confirming a plan or plans of reorganization in the Debtor's bankruptcy case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such a discharge unless and until the Financing is indefeasibly paid in full by its terms and all obligations of the Lender to make loans or other financial accommodations are terminated, unless otherwise consented to in writing by the Lender.

26.     To the extent the terms and conditions of the Financing Documents are in conflict with the terms and conditions of this Financing Order, the terms and conditions of this Financing Order shall control.

27.     This Financing Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by the Lender and the Debtor without the necessity of entry into the docket sheet of the Debtor's bankruptcy case. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

28.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Financing Order and to adjudicate any and all disputes in connection therewith.

29.     Nothing herein shall be deemed or construed to waive, limit or modify the rights of the Lender to seek additional relief in the Debtor's bankruptcy case in accordance with any provision of the Bankruptcy Code or applicable law.

30.     Nothing contained herein shall waive or modify any rights and remedies which the Lender has or may come to have under the Financing Documents, this Financing Order, at law, in equity, or otherwise.

28.     **THE FINANCING DOCUMENTS AND THIS FINANCING ORDER REPRESENT THE FINAL AGREEMENT BETWEEN THE LENDER AND THE TRUSTEE AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUSLY OR SUBSEQUENT ORAL AGREEMENTS OF SUCH**

**PARTIES.   THERE ARE NO UNWRITTEN OR ORAL AGREEMENTS BETWEEN SUCH PARTIS.**

      **ACCORDINGLY, IT IS ORDERED AS FOLLOWS:**

      1.    Trustee, on behalf of the Debtor, is authorized to incur the Financing described in paragraphs 1 through 28 above, and the terms and conditions set forth in paragraphs 1 through 28 above are incorporated into this paragraph of this Financing Order as if restated herein, are SO ORDERED and such obligations are effective upon entry of this Financing Order.

      2.    The hearing for final approval of the Financing Documents and this interim Order shall be held at _____ o'clock _____.m. on August _____, 2010.

      DATED: _____, 2010.

 

_____

HON. JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM AND CONTENT:

COKINOS, BOSIEN & YOUNG

*/s/ Craig Power*
Craig Power    TBN 16210500
Four Houston Center
1221 Lamar Street, 16th Floor
Houston ,TX 77010
Phone: (713) 535-5500
Fax: (713) 535-5533

**ATTORNEYS FOR TEXAS REEXCAVATION LC**


PREPARED & SUBMITTED BY AND ENTRY REQUESTED:

*/s/ Wayne Kitchens*
Rhonda R. Chandler    TBN 04101600
Wayne Kitchens        TBN 11541110
Heather H. McIntyre   TBN 24041076
Hughes Watters Askanase, L.L.P.
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Phone: (713) 759-0818
Fax: (713)759-6834
**ATTORNEYS FOR THE TRUSTEE**

1754691-1:GCRANE:0002

## Schedule 1

### Permitted Liens

Liens in favor of taxing authorities for ad valorem and business property taxes in the aggregate approximate amount of $500,000.

Lien in favor of Texas Workforce Commission in the approximate amount of $48,000, as reflected in the State Tax Lien recorded in/under Clerk's File No. 20090074649 in the Real Property Records of Harris County, Texas.

Potential federal tax lien for Section 941 taxes for the period ended 6/30/07, in the approximate amount of $1200.

Mechanics' liens, workmen's liens, carriers' liens, repairmen's liens, and landlord's liens.

Statutory liens for any tax assessment or governmental charge or levy that is not overdue.

Any liens granted in any Memorandum of Understanding approved by the Bankruptcy Court.

# SECURED SUPERPRIORITY PROMISSORY NOTE

$250,000.00                    Houston, Texas                    August 31, 2010

FOR VALUE RECEIVED, Janet Northrup, acting solely in her capacity as the duly appointed Chapter 11 Trustee ("Maker") of GoodCrane Corporation, a Texas corporation, unconditionally promises to pay to the order of Texas Reexcavation LC ("Payee"), c/o Craig Power, 1221 Lamar, 16th Floor, Houston, Texas 77010, or such other address given to Maker by Payee, the principal sum of TWO HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($250,000.00) in lawful money of the United States of America, together with interest on the unpaid principal balance from day to day outstanding, computed from the date hereof until maturity at the rates per annum provided below.

1.     Definitions.  As used herein, the following terms have the respective meanings assigned to such terms:

"Bankruptcy Case" means the bankruptcy case filed by Debtor under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, Case No. 09-34031-H4-11; *In re GoodCrane Corporation*.

"Bankruptcy Code" means Title 11 of the United States Code (11 U.S.C. §§ 101, et seq.), as now and hereafter in effect, or any successor statute.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

"Business Day" means, for all purposes, any day other than a Saturday, Sunday, or day on which national banks are authorized to be closed under the laws of the State of Texas.

"Collateral" has the meaning set forth in Section 19 hereof.

"Debtor" means GoodCcrane Corporation, a Texas corporation.

"Default" has the meaning set forth in Section 10 hereof.

"Financing Documents" means, collectively, (a) this Promissory Note, (b) all agreements, documents, and instruments in favor of Payee ever delivered under this Promissory Note, (c) the Financing Order, and (d) all renewals, extensions, and restatements of, and amendments and supplements to, the foregoing.

"Financing Order" means, collectively, (a) the order of the Bankruptcy Court pursuant to Bankruptcy Code section 364 approving the Financing Documents and authorizing the incurrence by Maker of postpetition secured and superpriority indebtedness in accordance with the Financing Documents on an interim basis, which order has not been reversed, modified, vacated, overturned, or stayed pending appeal and is in form and substance satisfactory to Payee; and (b) the final order of the Bankruptcy Court pursuant to Bankruptcy Code section 364, approving the Financing Documents, confirming the interim order described in subclause (a) of

**Exhibit "A"**

this paragraph, and authorizing the incurrence by Maker of permanent postpetition secured and superpriority indebtedness in accordance with the Financing Documents, which order has not been reversed, modified, vacated, overturned, or stayed pending appeal and is in form and substance satisfactory to Payee.

"Material Adverse Effect" means, with respect to any event, act, condition or occurrence of whatever nature (including any adverse determination in any litigation, arbitration, or governmental investigation or proceeding), whether singly or in conjunction with any other event(s), act(s), condition(s), occurrence(s), regardless of whether related, a material adverse change in, or a material adverse effect on, any of (a) the condition of the Purchased Assets, (b) the rights and remedies of Payee under any Financing Documents, or the ability of Maker to perform any of its obligations under any Financing Document, (c) the legality, validity or enforceability of any Financing Document, or (d) the existence, perfection or priority of any security interest granted to Payee in the Collateral.

"Maturity Date" means the earliest of (a) the date of the closing under the terms of any definitive agreement that may be executed by Maker, as seller, and Payee, as purchaser, of the Purchased Assets; (b) the date of closing of any other sale of assets of the Debtor on which Lender is granted a lien by the Financing Documents, in an amount sufficient to repay this Promissory Note in whole or in part, provided, however, that if such sale generates proceeds sufficient to pay this Promissory Note only in part, then only that part of the Promissory Note shall mature on the date of closing of such sale; or (c) August 31, 2011.

"Maximum Rate" means, at all times, the maximum rate of interest that may be charged, contracted for, taken, received or reserved by Payee in accordance with applicable Texas law (or applicable United States federal law to the extent that such law permits Payee to charge, contract for, receive or reserve a greater amount of interest than under Texas law). The Maximum Rate shall be calculated in a manner that takes into account any and all fees, payments, and other charges in respect of the Financing Documents that constitute interest under applicable law. Each change in any interest rate provided for herein based on the Maximum Rate resulting from a change in the Maximum Rate shall take effect without notice to Maker at the time of such change in the Maximum Rate.

"Obligation" means all indebtedness, liabilities, and obligations, of every kind and character, of Maker, now or hereafter existing, in favor of Payee, including, but not limited to, all indebtedness, liabilities, and obligations arising under this Promissory Note and the other Financing Documents.

"Permitted Liens" means the liens listed on Schedule 1 attached to this Promissory Note.

"Person" means any natural person, corporation, limited liability company, professional association, limited partnership, general partnership, joint stock company, joint venture, association, company, trust, bank, trust company, land trust, business trust, hedge fund or other organization, whether or not a legal entity, and any government or agency or political subdivision thereof.

"Purchased Assets" means the assets of the Debtor identified in paragraph 4 of the Letter of Intent.

"Promissory Note" means this Secured Superpriority Promissory Note, as it may be renewed, extended, amended, or restated.

"Related Indebtedness" has the meaning set forth in Section 13 hereof.

2.        [Intentionally Omitted]

3.        Payment of Principal and Interest.  The unpaid principal balance of, and interest on, this Promissory Note shall be due and payable in full on the Maturity Date.

4.        Interest.

(a)        Rate of Interest.  Subject to Section 4(c) below, the unpaid principal balance of this Promissory Note shall bear interest from the date of hereof until repaid at a rate per annum that shall from day to day be equal to the lesser of (i) the Maximum Rate or (ii) eight percent (8.00%) per annum (the "Contract Rate").

(b)        Interest on Past-Due Amounts.  To the extent permitted by applicable law, on the occurrence and during the continuance of a Default, the unpaid principal of, and accrued interest on, this Promissory Note shall bear interest at the lesser of (i) the Maximum Rate or (ii) the Contract Rate plus two percent (2%) per annum.

(c)        Recapture.  If the Contract Rate exceeds the Maximum Rate, then the Contract Rate shall be limited to the Maximum Rate, but any subsequent reductions in the applicable rate shall not reduce the interest rate thereon below the Maximum Rate until the total amount of accrued interest equals the amount of interest that would have accrued if the Contract Rate had always been in effect.  If at maturity (stated or by acceleration) the total interest paid or accrued is less than the interest that would have accrued if the Contract Rate had always been in effect, then, at that time and to the extent permitted by applicable law, Maker shall pay an amount equal to the difference between (i) the lesser of the amount of interest that would have accrued if the Contract Rate had always been in effect and the amount of interest that would have accrued if the Maximum Rate had always been in effect and (ii) the amount of interest actually paid or accrued under this Promissory Note.

(d)        Generally.  Interest will be calculated on the basis of actual number of days (including the first day but excluding the last day) elapsed but computed as if each calendar year consisted of 360 days (unless the calculation would result in an interest rate greater than the Maximum Rate, in which event interest will be calculated on the basis of a year of 365 or 366 days, as applicable).  All interest rate determinations and calculations by Payee are conclusive and binding absent manifest error.

5.        Prepayment.  Maker may prepay this Promissory Note, in whole or in part, at any time prior to the Maturity Date.

6.      Payment Dates; Manner of Payment; Application of Payments.   Should the principal of, or any installment of the principal of or interest on, this Promissory Note become due and payable on any day other than a Business Day, then the maturity thereof shall be extended to the next succeeding Business Day, and interest shall be payable with respect to such extension.  All payments of principal of, and interest on, this Promissory Note shall be made by Maker to Payee at the address specified above in the preamble paragraph in federal or other immediately available funds.  Payments made to Payee by Maker hereunder shall be applied first to accrued interest and then to principal.  Payments received by Payee after 2:00 p.m. on any Business Day shall be deemed to have been received on the following Business Day.

7.      Representations and Warranties.   To induce Payee to make the Advances under this Promissory Note and to enter into the other Financing Documents, Maker represents and warrants to Payee as follows:

(a)      Maker has full power and authority to execute and deliver this Promissory Note and the other Financing Documents and to incur and perform the obligations provided for therein, all of which have been duly authorized by all proper and necessary action of Maker and by the Bankruptcy Court.  No consent or approval of any public authority or other third party (other than the Bankruptcy Court) is required as a condition to the validity of any Financing Document.  Maker is in compliance with all laws and regulatory requirements to which it is subject.

(b)      There is no event that has occurred and is continuing which is a Default under this Promissory Note.

(c)      This Promissory Note and the other Financing Documents have been executed and delivered by, and are the legal and binding obligations of, Maker and are enforceable against Maker in accordance with their terms, subject only to the approval of the Bankruptcy Court.

(d)      Other than the Bankruptcy Case, adversary proceedings in connection with the Bankruptcy Case, and prepetition litigation stayed under Bankruptcy Code section 362, no litigation, investigation, or proceeding of or before any court, governmental authority, tribunal, arbitrator, or administrative body is pending or, to the knowledge of Maker, threatened (i) with respect to the Purchased Assets, any of the Financing Documents or any of the transactions contemplated hereby or thereby or (ii) that could reasonably be expected to have a Material Adverse Effect.

(e)      There is no document pertaining to the power or authority of Maker and, other than security interests alleged to have been granted by the Debtor prepetition, no provision of any existing agreement, mortgage, indenture or contract binding on Maker or affecting the Purchased Assets, which would conflict with or in any way prevent the execution, delivery or carrying out of the terms of this Promissory Note and the other Financing Documents.

(f)      Subject to the terms of the Order of the Bankruptcy Court approving the settlement between Maker and certain members and affiliates of the Almeda family (docket no. 364 in the Debtor's bankruptcy case) Maker has good, valid, legal and indefeasible title to the Collateral.  Subject to the entry and effectiveness of the Financing Order, the liens and security

interests granted to Payee pursuant to the Financing Documents will be superior to any liens, security interests, claims, or other encumbrances, except Permitted Liens.

(g)    The security interest in the Collateral created by this Promissory Note will be duly perfected once the action required for perfection under applicable law has been taken.  The creation, attachment and perfection of such security interest does not require the consent of any third party other than the Bankruptcy Court.  Once perfected, such security interest will constitute a first and prior lien on the Collateral.

(h)    All factual information furnished by Maker to Payee in connection with this Promissory Note and any other Financing Document is and will be accurate and complete on the date as of which such information is delivered to Payee and is not and will not be incomplete by the omission of any material fact necessary to make such information not misleading.

8.    <u>Affirmative Covenants</u>.  Until full payment and performance of the Obligation, Maker will:

(a)    Cause Debtor to maintain its existence, good standing and qualification to do business where required and comply with all laws, regulations and governmental requirements, including, without limitation, environmental laws applicable to it or to any of its property, business, operations, and transactions.

(b)    At all times (i) (A) maintain, preserve, and protect, and cause Debtor to maintain, preserve, and protect, in all material respects all Collateral and the remainder of the material property of Debtor used or useful in the conduct of Debtor's business, (B) keep the same in good repair, working order, and condition in all material respects, and (C) make, or cause to be made, all material needful and proper repairs, renewals, replacements, betterments, and improvements thereto so that the business carried on in connection therewith may be conducted properly and in accordance with standards generally accepted in businesses of a similar type and size and (ii) maintain and keep, and cause Debtor to maintain and keep, in full force and effect all licenses and permits necessary to the proper conduct of Debtor's business.

(c)    Subject to necessary approval of the Bankruptcy Court, pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its obligations incurred after the filing of the Bankruptcy Case of whatever nature (including taxes, assessments, and other obligations), except (i) where such obligations have been provided for on the books of Maker and the amount or validity of any such obligations is currently being contested in good faith by appropriate proceedings, (ii) where such obligations are for post-petition debts owed to the Debtor's Chief Restructuring Officer and professionals employed by the Debtor, the Maker, or the Official Committee of Unsecured Creditors, or (iii) to the extent that failure to comply therewith could not, in the aggregate, be reasonably expected to have a Material Adverse Effect.

(d)    Use the proceeds of this Promissory Note solely to fund the administrative expenses of Debtor's bankruptcy estate in a manner consistent with the Financing Order.

(e)    Promptly give notice to Payee of the occurrence of any Default or event that could lead to a Default promptly after knowledge thereof.

(f)     Cause to be done, executed, acknowledged and delivered all such further acts, conveyances and assurances as Payee shall reasonably require for accomplishing the purposes of this Promissory Note, the Financing Order, and the other Financing Documents to which it is a party, including any and all acts and execute or cause to be executed any and all documents (including, without limitation, financing statements and continuation statements) for filing under the provisions of the Uniform Commercial Code or any other applicable law that are necessary or advisable to maintain in favor of Payee its liens and security interests in the Collateral.

9.      <u>Negative Covenants</u>.   Until full payment and performance of the Obligation, Maker will not:

(a)     At any time, seek, consent to, or suffer to exist any (i) order of the Bankruptcy Court (A) for the appointment of a trustee other than Maker or an examiner with managerial powers, other than at the request of Payee or any of its affiliates, under Bankruptcy Code section 1104, or (B) dismissal of the Bankruptcy Case or conversion of it into a proceeding under chapter 7 of the Bankruptcy Code; (ii) postpetition indebtedness, except accrued professional fees and expenses and the indebtedness under this Promissory Note; (iii) reversal, modification, amendment, stay or vacation of any Financing Order, except for modifications and amendments agreed to by Payee; (iv) administrative expense or unsecured claim against Maker (now existing or hereafter arising of any kind or nature whatsoever, including without limitation any administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c) 726 and 1114 of the Bankruptcy Code) equal or superior to the priority of Payee in respect of the Obligation; and (v) postpetition lien, security interest, claim, or encumbrance on or against the Collateral, except for the lien and security interest in favor of Payee in respect of the Collateral granted by Maker hereunder.

(b)     Pay any administrative expense claims except (i) claims for professional fees as allowed under the interim or final Order of the Bankruptcy Court, (ii) the Obligation due and payable hereunder, (iii) expenses incurred in the ordinary and usual course of the Debtor's business consistent with past practice; and (iv) other administrative expense claims as permitted by the Bankruptcy Court pursuant to a motion or application filed by a non-Debtor party, in each case prior to the date of an occurrence of a Default.

10.     <u>Default and Remedies</u>.

(a)     A "<u>Default</u>" shall exist hereunder if any one or more of the following events shall occur: (i) Maker shall fail to pay when due any principal of, or interest on, this Promissory Note; (ii) any representation or warranty made by Maker to Payee herein or in any other Financing Document shall prove to be untrue or inaccurate in any material respect; (iii) default shall occur in the performance of any of the covenants or agreements of Maker contained herein, in any other Financing Document, or in any other document executed or delivered to Payee in connection herewith; (iv) the Promissory Note or any of the other Financing Documents shall cease to be legal, valid, binding agreements enforceable against any party executing the same in accordance with the respective terms thereof or shall in any way be terminated or become or be declared ineffective or inoperative or shall in any way whatsoever cease to give or provide the respective liens, security interests, rights, titles, interests, remedies, powers or privileges intended to be created thereby; (v) Payee's liens on or security interests in any of the Collateral should at

any time cease to be valid and enforceable or cease to be first priority liens or security interests (other than Permitted Liens), or Maker shall so assert in writing; (vi) Maker shall incur any indebtedness other than the indebtedness under this Promissory Note or shall grant a lien on or security interest in the Collateral or any portion thereof to any Person other than Payee; (vii) Maker shall default in the performance or observance of any term, covenant, condition or agreement contained in this Promissory Note or any other Financing Document; (viii) Maker shall commence any action in the Bankruptcy Case or other forum adverse to Payee or its rights and remedies under the Financing Documents or the Financing Order; (ix) the terms of this Promissory Note or any other Financing Document shall be revised, modified or vacated by order of the Bankruptcy Court in a manner not acceptable to Payee; (x) an order shall be entered dismissing the Bankruptcy Case or converting it into a proceeding under chapter 7 of the Bankruptcy Code; (xi) a trustee other than Maker shall be appointed or elected in the Bankruptcy Case under Bankruptcy Code section 1104, or an examiner shall be appointed in the Bankruptcy Case under Bankruptcy Code section 1106(b) and such trustee or examiner takes any action to interfere with or impair the transactions contemplated by the Promissory Note or any other Financing Document ; (xii) to the extent the Obligation is still outstanding, a proposed chapter 11 plan of reorganization shall be filed, or chapter 11 plan of reorganization shall be confirmed, for Maker that does not provide for payment in full in cash of the Obligation on or before the effective date of, or substantial consummation of, such plan of reorganization, or Maker shall file a chapter 11 plan in the Bankruptcy Case that does not provide for the full, final and indefeasible payment of the Obligation in immediately available funds; (xiii) an order shall be entered in the Bankruptcy Case that (A) permits Maker to incur indebtedness secured by any claim of the kind described in Bankruptcy Code section 364(c)(1) or by a lien equal or superior to the lien on the Collateral granted to Payee hereunder, unless such indebtedness is used immediately to indefeasibly and finally pay the Obligation in cash in full, (B) permits Maker the right to use the Collateral other than in accordance with the terms of the Financing Order, unless such Collateral is used immediately to indefeasibly and finally pay the Obligation in cash as provided in Section 2 and the definition of "Maturity Date" above, or (C) modifies, reverses, revokes, stays, rescinds, vacates, or amends the Financing Order without Payee's express prior written consent; (xiv) any change shall occur after execution of this Promissory Note by the parties in the condition or value of the Purchased Assets, or any event or condition exists, which in any case would, in the reasonable judgment of Payee, be reasonably likely to have a Material Adverse Effect; (xv) any attempt by Maker to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, the effect of which is to invalidate, reduce or otherwise impair Payee's claims, or to subject the Collateral to a material surcharge pursuant to Bankruptcy Code section 506(c); (xvi) Maker shall apply for an order substituting any assets for all or any portion of the Collateral; or (xvii) Maker ceases to conduct Debtor's operations in the ordinary and usual course of business consistent with past practice.

(b)     If Maker fails or refuses to pay any part of the principal of or interest on this Promissory Note or the Obligation as the same becomes due, or on the occurrence of any Default hereunder or under any other agreement or instrument securing or assuring the payment of this Promissory Note or executed in connection herewith, then in any such event the holder hereof may, at its option, (i) declare the entire unpaid balance of principal and accrued interest of the Obligation to be immediately due and payable without presentment or notice of any kind which Maker waives pursuant to Section 10 herein, (ii) reduce any claim to judgment, and/or (iii) pursue and enforce any of Payee's rights and remedies available pursuant to any applicable law

or agreement including, without limitation, foreclosing all liens and security interests securing payment thereof or any part thereof.

11.     Waivers.  Except as expressly provided in this Promissory Note, Maker and each surety, endorser, guarantor, and other party ever liable for payment of any sums of money payable on this Promissory Note, waives presentment, protest, notice of protest and non-payment, or other notice of default, notice of acceleration and intention to accelerate, and agrees that its liability under this Promissory Note shall not be affected by any renewal or extension in the time of payment hereof, or in any indulgences, or by any release or change in any security for the payment of this Promissory Note, and hereby consents to any and all renewals, extensions, indulgences, releases, or changes, regardless of the number of such renewals, extensions, indulgences, releases, or changes.  Maker further waives (i) any right to require Payee to proceed against any other Person, exhaust any Collateral or other security for the Obligation, or to pursue any other remedy in Payee's power; (ii) any and all notice of acceptance of this Promissory Note and of the creation, modification, rearrangement, renewal or extension for any period of the Obligation from time to time; and (iii) and any defense arising by reason of any disability or other defense, other than the defense of payment.

12.     No Waiver.  No waiver by Maker or Payee of any of their respective rights or remedies hereunder or under any other document evidencing or securing this Promissory Note or otherwise shall be considered a waiver of any other subsequent right or remedy of Maker or Payee, as appropriate; no delay or omission in the exercise or enforcement by Maker or Payee of any rights or remedies shall ever be construed as a waiver of any right or remedy of Maker or Payee; and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any right or remedy of Maker or Payee.

13.     Limitation of Interest.  It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply strictly with the applicable law governing the maximum rate or amount of interest payable on the indebtedness evidenced by this Promissory Note and the other Financing Documents, and the Related Indebtedness (defined below) (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, reserve or receive a greater amount of interest than under applicable law).  If the applicable law is ever judicially interpreted so as to render usurious any amount (a) contracted for, charged, taken, reserved or received pursuant to this Note, the other Financing Documents, or any other communication or writing by or between Maker and Payee related to the transaction or transactions that are the subject matter of the Financing Documents, (b) contracted for, charged, taken, reserved or received by reason of Payee's exercise of the option to accelerate the maturity of this Promissory Note and/or any and all indebtedness paid or payable by Maker to Payee pursuant to any Financing Document other than this Promissory Note (such other indebtedness being referred to in this Section as the "Related Indebtedness"), or (c) Maker will have paid or Payee will have received by reason of any voluntary prepayment by Maker of this Promissory Note and/or the Related Indebtedness, then it is the parties' express intent that all amounts charged in excess of the Maximum Rate shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Rate theretofore collected by Payee shall be credited on the principal balance of this Promissory Note and/or the Related Indebtedness (or, if this Promissory Note and all Related Indebtedness have been or would thereby be paid in full, refunded to Maker), and the provisions of this Promissory Note and the other Financing Documents shall

immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Promissory Note or Related Indebtedness has been paid in full before the end of the stated term thereof, then Maker and Payee agree that Payee shall, with reasonable promptness after Payee discovers or is advised by Maker that interest was received in an amount in excess of the Maximum Rate, either refund such excess interest to Maker and/or credit such excess interest against this Promissory Note and/or any Related Indebtedness then owing by Maker to Payee.  Maker agrees that as a condition precedent to any claim seeking usury penalties against Payee, Maker will provide written notice to Payee, advising Payee in reasonable detail of the nature and amount of the violation, and Payee shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Maker or crediting such excess interest against this Promissory Note and/or the Related Indebtedness then owing by Maker to Payee.  All sums contracted for, charged, taken, reserved or received by Payee for the use, forbearance or detention of any indebtedness evidenced by this Promissory Note and/or the Related Indebtedness shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of this Promissory Note and/or the Related Indebtedness (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of this Promissory Note and/or the Related Indebtedness does not exceed the Maximum Rate from time to time in effect and applicable to this Promissory Note and/or the Related Indebtedness for so long as indebtedness is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to this Promissory Note and/or any of the Related Indebtedness.  Notwithstanding anything to the contrary contained herein or in any of the other Financing Documents, it is not the intention of Payee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

14.   Ceiling Election.  To the extent that Payee relies on Chapter 303 of the Texas Finance Code to determine the Maximum Rate payable on this Promissory Note and/or any other portion of the Obligation, Payee will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303.  To the extent United States federal law permits Payee to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Payee will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Rate.  Additionally, to the extent permitted by applicable law now or hereafter in effect, Payee may, at its option and from time to time, utilize any other method of establishing the Maximum Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Maker as provided by applicable law now or hereafter in effect.

15.   Collection Expenses.  If this Promissory Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceeding at law or in equity, or in bankruptcy (other than timely payment by Maker in accordance with the terms hereof in the Bankruptcy Case), receivership or other court proceedings, Maker agrees to pay all costs of collection, including, but not limited to, court costs and reasonable attorneys' fees, including all costs of appeal.

16. <u>Governing Law</u>.  THIS PROMISSORY NOTE IS BEING EXECUTED AND DELIVERED, AND IS INTENDED TO BE PERFORMED IN, THE STATE OF TEXAS. EXCEPT TO THE EXTENT THAT THE LAWS OF THE UNITED STATES MAY APPLY TO THE TERMS HEREOF, THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS PROMISSORY NOTE.

17. <u>Waiver of Jury Trial</u>.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, MAKER IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THE FINANCING DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE ACTIONS OF PAYEE IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT THEREOF.  ALL DISPUTES RELATED TO THIS PROMISSORY NOTE OR THE OTHER FINANCING DOCUMENTS SHALL BE DETERMINED BY THE BANKRUPTCY COURT.

18. <u>Final Agreement</u>.  THE PROVISIONS OF THIS PROMISSORY NOTE AND THE OTHER FINANCING DOCUMENTS MAY BE AMENDED OR REVISED ONLY BY AN INSTRUMENT IN WRITING SIGNED BY MAKER AND PAYEE.  THIS PROMISSORY NOTE AND THE OTHER FINANCING DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT OF MAKER AND PAYEE WITH RESPECT TO THE MATTERS IN THIS PROMISSORY NOTE AND THE OTHER FINANCING DOCUMENTS AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF MAKER AND PAYEE.  THERE ARE NO ORAL AGREEMENTS BETWEEN MAKER AND PAYEE.

19. <u>Grant of Security Interest</u>.  Pursuant to Bankruptcy Code sections 364(c)(2) and (d), in order to secure the full and complete payment and performance of the Obligation when due, Maker (a) grants to Payee a first-priority security interest, subject only to the Permitted Liens, in (i) all of Maker's interest in all or substantially all of the assets of Debtor's bankruptcy estate and (ii) the products and proceeds from the sale of all or substantially all of the assets of Debtor's bankruptcy estate (collectively, the "<u>Collateral</u>"), and (b) pledges and collaterally conveys and assigns the Collateral to Payee, all on and subject to the terms and conditions of this Promissory Note and the Financing Order.  Such security interest is granted, and pledge and collateral assignment are made, as security only and shall not subject Payee to, or transfer or assign or in any way affect or modify, any obligation of Maker with respect to any of the Collateral or any transaction involving or giving rise thereto.

20. All liens, encumbrances and priorities granted hereby shall be, and are, subordinate to the liens, encumbrances and priorities granted to Karl Winter by the Bankruptcy Court in the Bankruptcy Case at docket nos. 435 and 455, and subject to all other subordinations and restrictions set forth in those orders.

[*Signature Page to Follows*]

EXECUTED as of the date first above written.

**MAKER:**

By:_____
      JANET NORTHRUP, acting solely in
      her capacity as the CHAPTER 11
      TRUSTEE OF GOODCRANE CORPORATION

## Schedule 1

**Permitted Liens**

Liens in favor of taxing authorities for ad valorem and business property taxes in the aggregate approximate amount of $500,000.

Lien in favor of Texas Workforce Commission in the approximate amount of $48,000, as reflected in the State Tax Lien recorded in/under Clerk's File No. 20090074649 in the Real Property Records of Harris County, Texas.

Potential federal tax lien for Section 941 taxes for the period ended 6/30/07, in the approximate amount of $1200.

Mechanics' liens, workmen's liens, carriers' liens, repairmen's liens, and landlord's liens.

Statutory liens for any tax assessment or governmental charge or levy that is not overdue.

Any liens granted in any Memorandum of Understanding approved by the Bankruptcy Court.